UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KEVIN SCARCELLA,

                Plaintiff,                          COMPLAINT

    -against-

                                              Case Number:  1:23-cv-01382

MARK MISURACA, VILLAGE OF COXSACKIE,
VILLAGE OF COXSACKIE POLICE DEPARTMENT,
SAMUEL MENTO, MARK EVANS,
PAUL ROBERTSON,

                Defendants.

---

## **INTRODUCTION**

1.      This is a civil action seeking redress for violations of the Plaintiff's constitutional rights under the United States Constitution and 42 U.S.C. § 1983.

## **JURISDICTION AND VENUE**

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action seeks to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiff by the United States Constitution and by federal law.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred within this district.

## **PARTIES**

4.      Plaintiff is an individual residing in Albany County, State of New York.

5.      Defendant Mark Misuraca is an individual residing in Greene County, State of New York.

6.      Defendant Officer Robertson is an individual residing in Greene County, State of New York, and is a law enforcement officer employed by the Village of Coxsackie Police Department.

7.      Defendant Samuel Mento is an individual residing in Greene County, State of New York, and is the Chief of Police for the Village of Coxsackie Police Department.

8.      Defendant Mark Evans is an individual residing in Greene County, State of New York, and is the Mayor of the Village of Coxsackie.

9.      Defendant Village of Coxsackie (the "Village") is a municipal entity in the State of New York.

10.     Defendant Village of Coxsackie Police Department ("Police Department") is a law enforcement agency in the State of New York.

## **FACTUAL BACKGROUND**

11.     On or around 9:00 a.m., September 3, 2022, Plaintiff was subjected to an assault of an extreme and violent nature by Defendant Misuraca, resulting in severe injuries including a broken bone in his back, head injury, and the need for oral surgery.

12.     Plaintiff was attempting to leave the home of Heather Bendick when defendant Misuraca swung a baseball bat at plaintiff's car, shattering the windshield and a back window of the vehicle.  Plaintiff maneuvered his vehicle out of the driveway while under attack and proceeded down the road but unfortunately had mechanical issues with his car, leaving him stranded.

13.     Defendant Misuraca called defendant Robertson to come to his house in his capacity as a law enforcement official.

14.    While Defendant Robertson was present at Misuraca's residence in his official role as a law enforcement officer, it came to light that the Plaintiff's vehicle had experienced a mechanical failure.

15.    Defendant Misuraca, with full knowledge and consent of defendant Officer Robertson, decided he would engage in vigilante justice and chased after plaintiff in a vehicle. Once he found plaintiff, defendant Misuraca viciously assaulted him:  Plaintiff was kicked in the face and brutally attacked; had his life threatened; and was doused with gasoline and told if he ever speaks to Misuraca's step-daughter (Heather Bendick) again "he would light the fucking match next time."

16.    Defendant Officer Robertson arrived at the scene and, despite his full knowledge that Plaintiff was the victim (not the criminal), unlawfully detained and arrested him.

17.    Despite Plaintiff's request for the arrest of Defendant Misuraca, Defendant Officer Robertson refused to register the request, manipulated evidence, instructed medical personnel to avoid discussing the events with Plaintiff, and refused a proper investigation into the incident.

18.    Defendant Misuraca and defendant Robertson acted together to fabricate evidence to charge Plaintiff as the aggressor, knowing full well that Defendant Misuraca was the actual perpetrator.

19.    Defendants Mento and Evans were informed about these allegations but disregarded them without any inquiry, stating they "backed their officer". They refrained from investigating as they were aware that Defendant Misuraca was the perpetrator and sought to protect him and Defendant Robertson.

20.    Defendant Officer Robertson assured various individuals that he would "take care" of Defendant Misuraca and instructed Misuraca and his family not to worry, indicating his

intention to charge Plaintiff Kevin Scarcella to intimidate him and prevent the prosecution of Defendant Misuraca.

21.     Defendant Robertson further exacerbated Plaintiff's suffering by transporting the severely injured Plaintiff to a facility to remove the gasoline from his body using a powerful hose, thereby causing additional pain and taking such action to conceal Defendant Misuraca's criminal actions. Plaintiff was denied and delayed necessary medical treatment as Defendant Robertson prioritized concealing the crime over Plaintiff's welfare.

22.     Despite being aware of these facts, Defendants Mento and Evans continued to "back their officer."

23.     Upon information and belief, no investigation has been initiated into the actions of Defendants Robertson, Mento, or Evans.

24.     Defendants Misuraca and Robertson are alleged to have conspired under color of state law to physically harm Plaintiff.

25.     Prior to the assault, both Defendants were present at Heather Bendick's residence (next door to Misuraca's residence) and allegedly agreed to resort to vigilante justice rather than follow proper police procedures.

26.     Defendants Misuraca and Robertson are also alleged to have manipulated witnesses, including Heather Bendick, by threatening eviction and other adverse consequences unless they complied with the Defendants' fabricated narrative.

27.     Defendants Evans and Mento, as well as the Village of Coxsackie and the Village of Coxsackie Police Department, were informed of the aforementioned allegations but failed to conduct an investigation, take prompt remedial action, and allowed Defendants Misuraca and Robertson to conspire to violate Plaintiff's common law, statutory, and constitutional rights.

28.     The Village of Coxsackie and Village of Coxsackie Police Department are liable under the principles of Vicarious Liability and Respondeat Superior for the Common law claims asserted herein.

29.     Individual defendants Mento and Evans are personally liable for approving and condoning the activities of Misuraca and Robertson, allowing the Police Department to function more like a criminal enterprise than a law enforcement agency, and for their gross negligence and deliberate indifference.

## CAUSES OF ACTION

30.     Plaintiff incorporates all prior paragraphs of this Complaint.

31.     Plaintiff affirms that he filed a notice of claim within the required 90-day period subsequent to his injury.

32.     Plaintiff maintains numerous claims under both common law and civil rights law.

33.     The allegations against plaintiff in the pending criminal action against him assert violations of Penal Law 240.26 (Harassment); 120.14 (Menacing Second with Weapon) and 120.05 (assault with intention to cause serious physical injury).

34.     Plaintiff is alleged to have run over defendant's foot with his car and otherwise attempted to scare defendant Misuraca by using his car as a weapon.  These claims are outrageous and are not believable: what really happened is that defendant Misuraca harbors a negative opinion of plaintiff because he has previously been convicted of a crime and therefore defendant Misuraca did not want plaintiff to spend any time with his step-daughter.  This is why defendant Misuraca initially swung a bat at plaintiff's car and is the reason he brutally beat the plaintiff once he caught up to him.

35.     To establish personal liability against a government official for a constitutional violation, a plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right.

36.     Supervisors may be "personally involved" in the constitutional torts of their supervisees if: (1) the supervisory official, after learning of the violation, failed to remedy the wrong; (2) the supervisory official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (3) the supervisory official was grossly negligent in managing subordinates who caused the unlawful condition or event.

37.     "Personal involvement" of a supervisory official may be established by evidence of: (1) direct participation in the alleged constitutional violation; (2) failure to remedy a wrong after learning of it; (3) creation or maintenance of a policy under which unconstitutional violations occurred; (4) gross negligence in managing subordinates who committed the unconstitutional acts; or (5) deliberate indifference by failing to act on information indicating that constitutional violations were occurring.

38.     As set forth, above, defendants Mento and Evans were notified of the egregious constitutional violations suffered by plaintiff yet they refused to investigate and to "remedy the wrong."

39.     Further, this case supports a finding that the actions of defendant Misuraca (a private citizen) should be attributed to the State for the purposes of a Section 1983 lawsuit, which allows individuals to sue for constitutional violations.

40.     Private entity actions can be attributed to the state when the state provides "significant encouragement" to the private actor, the entity is a "willful participant in joint

activity with the state", or the entity's functions are "entwined" with state policies, known as the 'joint action' or 'close nexus test.

41.     The key question for these tests is whether the challenged actions of the private entity can be "fairly attributable" to the state.

42.     As set forth, above, defendants Misuraca and Robertson agreed to deprive plaintiff of his constitutional rights by allowing defendant Misuraca to hunt down the plaintiff and brutally beat him rather than follow proper police procedures.

43.     With regard to the individual defendants, liability will ultimately turn on whether the individual was "personally involved in the alleged deprivation."

44.     To establish Monell liability (against the Village and Police Department), the following elements must be demonstrated:

45.     Policy or Custom: The plaintiff must show that the municipal entity, through its policymakers, enacted a policy or maintained a custom that directly caused the constitutional violation. A policy generally involves a formal act by the municipality's legislative body or an administrative policy adopted by the highest-ranking officials. A custom, on the other hand, involves practices that are so persistent and widespread that they constitute a "custom or usage with the force of law."

46.     It is alleged in this regard the Village and Police Department routinely allow their police officers to engage in excessive force without investigating such claims.  Defendants should have taken prompt remedial action:  they should have investigated and took prompt action to deter such constitutional violations.   The inaction is attributable to defendants Mento and Evans, high ranking officials for the Village and Police Department.

47.     Policymaker Involvement: The plaintiff must demonstrate that the policy or custom was enacted or maintained by officials who have final policymaking authority. This means an official who has the power to make official policy on a particular issue or a wide range of issues.  As set forth above, the actions of Mento and Evans is sufficient to establish inaction by high ranking officials.

**First Cause of Action**
**(Assault against defendant Misuraca)**

48.     Plaintiff incorporates all prior paragraphs of this Complaint.

49.     The claims against Defendant Misuraca support a cause of action for assault as follows: It is alleged that Defendant Misuraca intentionally engaged in actions that led the Plaintiff to fear immediate harmful or offensive physical contact.

50.     Defendant Misuraca committed the assault by violently swinging a baseball bat at plaintiff and his vehicle, by verbal threats, by kicking and punching him, and, by dousing plaintiff with gasoline and threatening to light him on fire.

51.     As a result of Defendant Misuraca's actions, the Plaintiff experienced apprehension of such harmful or offensive contact.

52.     As a result of Defendant Misuraca's actions, Plaintiff has endured substantial physical and emotional distress.

53.     The damages suffered by the Plaintiff due to these actions surpass the monetary limit that could be awarded by any lower court.

54.     Defendant Misuraca acted deliberately, with full cognizance that his severe conduct would inflict harm upon the Plaintiff. Given his intentional and willful conduct, the imposition of punitive damages is warranted and justifiable.

**Second Cause of Action**
**(Battery against defendant Misuraca)**

55.    Plaintiff incorporates all prior paragraphs of this Complaint.

56.    The claims against Defendant Misuraca support a cause of action for battery as follows: It is alleged that Defendant Misuraca intentionally engaged in conduct which resulted in harmful or offensive bodily contact with the Plaintiff.

57.    This contact was made without the Plaintiff's consent, leading to physical harm and distress.

58.    Defendant Misuraca committed the battery by violently swinging a baseball bat at plaintiff and his vehicle, by verbal threats, by kicking and punching him, and, by dousing plaintiff with gasoline and threatening to light him on fire.

59.    As a result of Defendant Misuraca's actions, the Plaintiff experienced apprehension of such harmful or offensive contact.

60.    As a result of Defendant Misuraca's actions, Plaintiff has endured substantial physical and emotional distress.

61.    The damages suffered by the Plaintiff due to these actions surpass the monetary limit that could be awarded by any lower court.

62.    Defendant Misuraca acted deliberately, with full cognizance that his severe conduct would inflict harm upon the Plaintiff. Given his intentional and willful conduct, the imposition of punitive damages is warranted and justifiable.

**Third Cause of Action**
**(Battery against defendants Robertson, the Village, and Police Department)**

63.    Plaintiff incorporates all prior paragraphs of this Complaint.

64.     The actions of Defendant Robertson support a cause of action for battery as follows:  Defendant Robertson intentionally caused harmful and offensive bodily contact with the Plaintiff, who was already severely injured, by using a powerful hose to remove gasoline from his body at a facility. This action further exacerbated Plaintiff's suffering, causing additional pain.

65.     Despite Plaintiff's urgent need for medical treatment, Defendant Robertson prioritized concealing Defendant Misuraca's criminal actions over attending to Plaintiff's welfare, leading to a denial and delay in necessary medical treatment. This conduct was carried out intentionally and without the Plaintiff's consent, leading to further physical harm and distress.

66.     The Village and the Police Department face liability under the principle of Respondeat Superior for the negligent and intentional foreseeable acts of Officer Robertson.

67.     As a result of Defendant Robertson's actions, Plaintiff has endured substantial physical and emotional distress.

68.     The damages suffered by the Plaintiff due to these actions surpass the monetary limit that could be awarded by any lower court.

69.     Defendant Robertson acted deliberately, with full cognizance that his severe conduct would inflict harm upon the Plaintiff. Given his intentional and willful conduct, the imposition of punitive damages is warranted and justifiable.

### **Fourth Cause of Action**
### **(False Arrest/Imprisonment against all defendants except Mento and Evans)**

70.     Plaintiff incorporates all prior paragraphs of this Complaint.

71.     The claims against Defendants Misuraca and Robertson show that they conspired to falsely arrest and imprison the Plaintiff. The details of this conspiracy are as follows:

- It is alleged that both Defendants Misuraca and Robertson had the intention to confine the Plaintiff, as demonstrated by their actions and conversations.

- The Plaintiff was aware of his confinement, as evidenced by his subsequent actions and statements.

- The Plaintiff did not consent to the confinement, a fact made clear by his protests and attempts to seek help.

- The confinement was not privileged or legally justified. Despite their roles as law enforcement and former law enforcement officials, Defendants Misuraca and Robertson did not have grounds to arrest or detain the Plaintiff, especially given their knowledge of the true circumstances of the incident.


72.     The Village and the Police Department face liability under the principle of Respondeat Superior for the negligent and intentional foreseeable acts of Officer Robertson.

73.     Further, defendants Mento and Evans were notified of the true facts surrounding the events in question and they, on behalf of the Village and Police Department, decided to make the problem worse by "backing their officer" despite no basis to do so: resulting in further damage as plaintiff was ultimately arrested and held in jail over 6 months despite the fact that he was the victim, not the aggressor, in this matter.

74.     Plaintiff is alleged to have run over defendant's foot with his car and otherwise attempted to scare defendant Misuraca by using his car as a weapon. These claims are outrageous and are not believable: however, due to lies told by defendants Robertson and Misuraca the charges were pursued by the DA, resulting in plaintiff spending over six months in jail.

75.    As a result of Defendants' actions, Plaintiff has endured substantial physical and emotional distress.

76.    The damages suffered by the Plaintiff due to these actions surpass the monetary limit that could be awarded by any lower court.

77.    Defendant Misuraca and Robertson acted deliberately, with full cognizance that his severe conduct would inflict harm upon the Plaintiff. Given his intentional and willful conduct, the imposition of punitive damages is warranted and justifiable.

**Fifth Cause of Action**
**(Negligence against all defendants)**

78.    Plaintiff incorporates all prior paragraphs of this Complaint.

79.    The claims against all Defendants support a cause of action for negligence as follows:  each Defendant, by virtue of their respective roles and responsibilities, owed a duty of care to the Plaintiff to act in a manner that would prevent harm or injury to him.

80.    Each Defendant breached this duty of care through their actions or lack thereof, which fell below the standard of what a reasonable person would do in the same situation to prevent harm.

81.    The breach of this duty by each Defendant was the proximate cause of the injuries and damages suffered by the Plaintiff. It was reasonably foreseeable that such a breach could result in the harm that Plaintiff experienced.

82.    As a direct result of each Defendant's breach of duty, the Plaintiff suffered significant damages, both physical and emotional.

83.    The Village and the Police Department face liability under the principle of Respondeat Superior for the negligent and intentional foreseeable acts of Officer Robertson.

84.     Further, defendants Mento and Evans were notified of the true facts surrounding the events in question and they, on behalf of the Village and Police Department, decided to make the problem worse by "backing their officer" despite no basis to do so:  resulting in further damage as plaintiff was ultimately arrested and held in jail over 6 months despite the fact that he was the victim, not the aggressor, in this matter.

85.     As a result of Defendants' actions, Plaintiff has endured substantial physical and emotional distress.

86.     The damages suffered by the Plaintiff due to these actions surpass the monetary limit that could be awarded by any lower court.

<u>**Sixth Cause of Action**</u>
**(42 U.S.C. § 1983: Fabricated Evidence Claim against all defendants)**

87.     Plaintiff incorporates all prior paragraphs of this Complaint. Plaintiff incorporates all prior paragraphs of this Complaint.

88.     The claims against defendants support a cause of action for the fabrication of evidence, a violation of the Fourth and Fourteenth Amendments of the United States.

89.     As set forth above, plaintiff did not commit any crime; rather he was the victim of a violent assault.  Nonetheless, Judge Warren signed an arrest warrant on September 10, 2022 based upon the false evidence he was given.

90.     When a judge relies on fabricated evidence for a probable cause determination, resulting in pre-trial detention, it constitutes a Fourth Amendment violation. This applies to both indictment or preliminary hearings.

91.     In this case, it is alleged that Defendants knowingly used fabricated evidence to initiate criminal proceedings against the Plaintiff, resulting in a deprivation of liberty as he spent

over six months in jail due to these false claims. This action violates the due process right not to be subjected to criminal charges based on deliberately fabricated evidence by the government.

92.     Further, plaintiff has a constitutional right to be free from the use of false evidence to deprive him of his right to employment and to be free from false allegations of criminal activity.

93.     Here, Defendants Misuraca and Robertson intentionally fabricated evidence, leading to severe emotional distress, arrest, incarceration, loss of employment, and reputational harm.  Defendants Mento and Evans were promptly notified of the actions of their officer and defendant Misuraca yet they did not take any action to remedy the wrong.

94.     In addition plaintiff was assaulted while incarcerated, which would not have occurred had he not been incarcerated under dales evidence and pretense.

95.     Defendants Misuraca and Robertson acted intentionally, calculatingly, and maliciously, fully aware that their extreme behavior would cause harm to plaintiff.

96.     Due to this malicious and willful conduct, punitive damages are warranted.

97.     As a direct result of each Defendants breach of duty, the Plaintiff suffered significant damages, both physical and emotional.

98.     The damages suffered by the Plaintiff due to these actions surpass the monetary limit that could be awarded by any lower court.

### **Seventh Cause of Action**
**(42 U.S.C. §1983 Denial of Fair Trial against all Defendants)**

99.     Plaintiff incorporates all prior paragraphs of this Complaint.

100.    The claims against all Defendants support a cause of action for the denial of a fair trial, a violation of the Fourteenth Amendment.

101.    Defendants intentionally and maliciously manipulated evidence and orchestrated false testimonies to create a false narrative against the Plaintiff.

102.    This false narrative was presented during a preliminary hearing, severely prejudicing the Plaintiff's case and denying him the right to a fair trial.

103.    Defendants' actions directly led to a deprivation of Plaintiff's liberty, as he was unjustly incarcerated for over six months and out of work based on these false claims.

104.    As a result of Defendants' actions, Plaintiff suffered significant damage, both in terms of physical and emotional distress, and damage to his reputation.

105.    Due to this malicious and willful conduct, punitive damages are warranted.

## Eighth Cause of Action
### (42 U.S.C. §1983 false arrest against all Defendants)

106.    Plaintiff incorporates all prior paragraphs of this Complaint.

107.    The claims against all Defendants support a cause of action for false arrest, a subset of false imprisonment, which protects the personal interest of freedom from restraint of movement.

108.    False arrest under New York law and under section 1983 include the same elements:

-    The Defendants intended to confine the Plaintiff. In this case, it is alleged that all Defendants conspired and acted with the intention to unlawfully confine the Plaintiff.

-    The Plaintiff was conscious of the confinement. The Plaintiff was aware of his unlawful confinement and incarceration, which lasted for over six months.

-    The Plaintiff did not consent to the confinement. The Plaintiff neither consented to nor acquiesced in his confinement.

- The confinement was not otherwise privileged.

109.    Given the fabricated evidence and the manipulation of the judicial process, there was no legal justification or privilege for the Plaintiff's confinement.

110.    As a result of Defendants' actions, Plaintiff suffered significant harm, both in terms of his liberty and his reputation, and seeks redress for these violations of his constitutional rights.

111.    As a result of Defendants' actions, Plaintiff suffered significant damage, both in terms of physical and emotional distress, and damage to his reputation.

112.    Due to this malicious and willful conduct, punitive damages are warranted.

<u>**Ninth Cause of Action**</u>
**(42 U.S.C. §1983 First Amendment Retaliation Violation against all Defendants)**

113.    Plaintiff incorporates all prior paragraphs of this Complaint.

114.    The claims against all Defendants support a cause of action for the violation of the First Amendment right to free speech.

115.    The Plaintiff exercised his First Amendment right when he provided Defendant Robertson with information about Defendant Misuraca's aggressive actions and requested that Misuraca be the one who was arrested.

116.    The Defendants retaliated against the Plaintiff for exercising his First Amendment rights. When the Plaintiff refused to let the issue go and insisted on making a valid complaint about Misuraca, the Defendants arrested the Plaintiff, effectively punishing him for his protected speech.

117.    The retaliation was sufficiently adverse to deter a person of ordinary firmness from exercising their First Amendment rights. The arrest and subsequent detention of the Plaintiff was a severe retaliatory action that would deter an ordinary person from speaking out.

118.    There was a causal connection between the Plaintiff's speech and the Defendants' retaliatory action. The Plaintiff's arrest occurred because he insisted on reporting Misuraca's actions, indicating a clear causal link between his speech and the retaliation.

119.    The Plaintiff's right to free speech was violated when he was punished for speaking out about the unlawful actions of Defendant Misuraca.

120.    As a result of Defendants' actions, Plaintiff suffered significant harm, both in terms of his liberty and his reputation, and seeks redress for these violations of his constitutional rights.

121.    As a result of Defendants' actions, Plaintiff suffered significant damage, both in terms of physical and emotional distress, and damage to his reputation.

122.    Due to this malicious and willful conduct, punitive damages are warranted.

## Tenth Cause of Action
### (42 U.S.C. § 1983Fourth Amendment Excessive Force against all Defendants)

123.    Plaintiff incorporates all prior paragraphs of this Complaint.

124.    The claims against all Defendants support a cause of action for the use of excessive force, a violation of the Fourth Amendment's 'objective reasonableness' standard

125.    Defendant Misuraca acted with knowledge and approval of defendant Robertson when he brutally beat and threatened plaintiff.

126.    Defendant Robertson, used force that was excessive and objectively unreasonable in the context of the situation. Defendant Robertson exacerbated Plaintiff's injuries by forcefully

removing gasoline from plaintiff's his body with a powerful hose, causing additional pain and distress.

127.    The severity of the alleged crime at issue does not justify the use of such excessive force. The Plaintiff was the victim of an assault, not the perpetrator of a violent crime.

128.    The Defendants had no reason to believe that the Plaintiff posed an immediate threat to the safety of the officers or others. Plaintiff was severely injured and posed no threat to anyone's safety.

129.    The Plaintiff was neither actively resisting arrest nor attempting to evade arrest by flight. Despite this, excessive force was used against him.

130.    Viewing the force used in the full context, and with an eye toward the proportionality of the force in light of all the circumstances , it is clear that the Defendants; actions were not objectively reasonable and violated the Plaintiff's Fourth Amendment rights.

131.    As a result of Defendants' actions, Plaintiff suffered significant harm and seeks redress for these violations of his constitutional rights.

132.    As a result of Defendants' actions, Plaintiff suffered significant damage, both in terms of physical and emotional distress, and damage to his reputation.

133.    Due to this malicious and willful conduct, punitive damages are warranted.

## Eleventh Cause of Action
**(42 U.S.C. § 1983 Failure to Intervene against all Defendants)**

134.    Plaintiff incorporates all prior paragraphs of this Complaint.

135.    The claims against all Defendants support a cause of action for failure to intervene:  Each Defendant, by virtue of their respective roles and responsibilities, had an obligation to intervene to prevent the violation of Plaintiff's constitutional rights. This includes

preventing other law enforcement officers or individuals under their control or supervision from engaging in activities that infringe upon a person's constitutional rights.

136.    Defendant Robertson should have stopped defendant Misuraca from brutally beating plaintiff.

137.    Defendants Mento and Evans should have intervened after performing an investigation to stop the harm to plaintiff, resulting in his incarceration.

138.    Despite having knowledge of the unlawful conduct and having a realistic opportunity to intervene, each Defendant failed to prevent the other Defendants' actions, which included excessive force, fabricated evidence, and denial of a fair trial.

139.    The Defendants' failure to intervene directly contributed to the constitutional violations suffered by the Plaintiff and exacerbated his physical and emotional distress.

140.    As a result of Defendants' failure to intervene, Plaintiff suffered significant damage in terms of physical and emotional distress, and damage to his reputation.

141.    The Defendants' willful and malicious conduct in failing to intervene to prevent these constitutional violations warrants the imposition of punitive damages. Plaintiff seeks redress for these violations of his constitutional rights and for the harm he has suffered as a result.

## Twelfth Cause of Action
### (42 U.S.C. §1983 Denial of Right to Bodily Integrity against all Defendants)

142.    Plaintiff incorporates all prior paragraphs of this Complaint.

143.    The claims against all Defendants support a cause of action for the denial of the right to bodily integrity, a protection under the Fourteenth Amendment to the United States Constitution.

144.    The Defendants, by virtue of their respective roles and responsibilities and actions taken, affirmatively placed the Plaintiff in a position of danger that he would not have otherwise faced. This includes the violent assault by Defendant Misuraca, the excessive force used by Defendant Robertson, the subsequent assault received by plaintiff while he was incarcerated and the failure of all Defendants to intervene to prevent these harms.

145.    The Defendants' actions and inactions led to the Plaintiff being subjected to severe physical harm, including a broken bone in his back, a head injury, a broken jaw, and the need for oral surgery, that he would not have suffered but for the Defendants' conduct.

146.    Despite the Plaintiff's urgent need for medical treatment, Defendant Robertson prioritized concealing Defendant Misuraca's criminal actions over attending to Plaintiff's welfare, leading to a denial and delay in necessary medical treatment.

147.    As a result of Defendants' actions, Plaintiff suffered significant harm, both in terms of physical and emotional distress, and damage to his reputation.

148.    The Defendants' willful and malicious conduct in placing the Plaintiff in a position of danger and violating his right to bodily integrity warrants the imposition of punitive damages.

149.    Plaintiff seeks redress for these violations of his constitutional rights and for the harm he has suffered as a result.

## JURY DEMAND

150.    Pursuant to FRCP 38 plaintiff hereby demands a jury trial.

## **RELIEF SOUGHT:**

151.    Money damages in an amount to be decided by a jury; pain and suffering;

economic loss; Punitive damages; Attorneys' Fees; together with interest, costs, disbursements,

and other equitable relief the Court deems just and proper.

DATED:  December 15, 2023


FINN LAW OFFICES
Attorneys for Plaintiff


By:_____
          Ryan M. Finn, Esq.
P.O. Box 966
Albany, NY 12201
Ph: 518.928.1152
Fax:  518.677.1155
Ryan@LawFinn.com
www.LawFinn.com


          * Physical location:    12 Sheridan Avenue
                                              Albany, NY 12207